IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN LAWRENCE SCHOONMAKER, et al | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-cv-703 |
| | : | |
| HIGHMARK BLUE CROSS BLUE SHIELD, et al | : | |

O'NEILL, J.                                                        October 30, 2009

MEMORANDUM

Defendants Highmark Blue Cross Blue Shield and Highmark, Inc. filed a motion to dismiss and a motion to transfer venue to the United States District Court for the Western District of Pennsylvania on February 25, 2009.  Plaintiffs filed their response on March 3, 2009.  On March 4, 2009, I ordered that defendants' motions be deferred while the parties considered whether they could resolve the dispute through mediation or otherwise.  I denied defendants' motions without prejudice on August 11, 2009 pending the parties' attempts at resolution and allowed defendants to renew their motion by letter application if necessary.  On October 14, 2009, defendants requested to renew their motions and I ordered the motions renewed.  Presently before me are defendants' motions to dismiss and to transfer venue, plaintiffs' response and defendants' reply.

Defendants have moved to transfer venue to the United States District Court for the Western District of Pennsylvania.  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The burden of

establishing the need for transfer rests with the movant.   Jumara v. State Farm Ins. Co., 55 F.3d

873, 879-880 (3d Cir. 1995).  The Court of Appeals' decision in Jumara identified public and

private interests that courts should consider when determining whether to transfer venue.  Private

interests include:

> plaintiff's forum preference as manifested in the original choice; the
> defendant's preference;  whether  the  claim  arose  elsewhere;  the
> convenience of the parties as indicated by their relative physical and
> financial condition; the convenience of the witnesses-but only to the
> extent that the witnesses may actually be unavailable for trial in one
> of the fora; and the location of books and records (similarly limited
> to the extent that the files could not be produced in the alternative
> forum).

Id. at 879, internal citations omitted.  Public interests include:

> the enforceability of the judgment; practical considerations that could
> make  the  trial  easy,  expeditious,  or  inexpensive;  the  relative
> administrative  difficulty  in  the  two  fora  resulting  from  court
> congestion; the local interest in deciding local controversies at home;
> the public policies of the fora; and the familiarity of the trial judge
> with the applicable state law in diversity cases.

Id. at 879-80.  I will address each of the relevant factors.[1]

_____

[1]       The following factors are irrelevant: (1) the enforceability of the judgment;
judgment will be equally enforceable in this District or the Western District; (2) the local interest
in deciding local controversies at home; neither party is local to this District, and as will be

**A.      Plaintiffs' forum preference as manifested in the original choice**

Plaintiffs originally filed their complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania.  Defendants then removed the action to federal court.  The plaintiffs' choice of venue is generally accorded great weight, but other factors such as where the underlying events occurred and where the plaintiffs reside can override this concern.  This Court stated in Connors v. UUU Productions, Inc., 2004 WL 834726, at *6 (E.D. Pa. Mar. 15, 2004), "Although plaintiff's choice of venue 'generally receives substantial weight,' his choice in this case receives 'diminished weight' because he chose a forum in which he does not reside and in which none of the conduct giving rise to his claims occurred," quoting Lamusta v. Lawson Mardon Wheaton Inc., 2000 U.S. Dist. LEXIS 2708, at * 6 (E.D. Pa. Mar. 10, 2000), and Gallant v. Trustees of Columbia Univ., 111 F. Supp. 2d 638, 647 (E.D. Pa.2000).

Here, the uncontradicted allegation in the briefs is that plaintiffs live in and will be traveling from Michigan.  At the time defendants denied coverage plaintiff was undergoing treatment in Utah.  Furthermore, all of the underlying events giving rise to plaintiffs' cause of action occurred outside this District.  The decisions to deny plaintiff coverage occurred in defendants' principal places of business–Fifth Avenue Place, Pittsburgh, PA and 1800 Center Street, Camp Hill, PA.  The specific unit that reviews and authorizes the types of claims submitted by plaintiffs is located in the Pittsburgh, PA office.  Defendants have no offices in Philadelphia, PA and transact very little business in this District.

Plaintiffs argue repeatedly that the operative facts occurred in Plymouth Meeting,

---

discussed, the controversy did not occur in this District; (3) the public policies of the fora do not differ; and (4) the familiarity of the trial judge with the applicable state law in diversity cases is the same in both districts.

Montgomery County, PA where Health Advocate, Inc. is located. Health Advocate, Inc. is not a party to this litigation. Plaintiffs do not contend that Health Advocate, Inc. actually made any of the decisions which resulted in the denial of claims. Rather, Health Advocate, Inc. is a third party which apparently was retained by plaintiffs to assist them in communicating with defendants about their claims. In other words, Health Advocate, Inc. merely served as a conduit to pass along information from defendants to plaintiffs.

Because plaintiffs do not reside in this District and the underlying operative facts did not occur in this District, plaintiffs decision to file its original complaint in the Philadelphia County Court of Common Pleas will not be given great weight.

### B.    Defendants' preference

Defendants prefer that the litigation be transferred to the Western District which comprises Pittsburgh, one of defendants' principal places of business. All of defendants' employees who were involved in the underlying decisions and all relevant documents and records are located in Pittsburgh.

### C.    Whether the claim arose elsewhere

As discussed above, all of the relevant decisions occurred outside of this district. There is no evidence that any part of plaintiffs' claims arose in this District. Other than plaintiffs' bald assertions that "almost all of the operative facts giving rise to this case occurred in the Eastern District of Pennsylvania," including that Highmark made its initial decision to authorize treatment and then rescinded that decision in this District. Those assertions seem to be based on the assumption that by communicating its decisions through Health Advocates, Inc., defendants made those decisions in Plymouth Meeting, PA. However, the letters from defendants

4

concerning plaintiffs' complaint, which plaintiffs attach to their response, indicate on the letterhead "Highmark Blue Shield . . . Camp Hill, PA 17089. " Those letters also direct any correspondence to be sent to the Camp Hill address.  Similarly, defendants have presented copies of two letters which were sent to the attention of plaintiff Michael Schoonmaker concerning his claims with letterhead indicating

> Highmark Blue Shield
> Fifth Avenue Place
> 120 Fifth Avenue
> Suite P4420
> Pittsburgh PA 15222-3099

Thus, nothing supports plaintiffs' assertions that any part of their claims arose in this District.

      **D.**    **The convenience of the parties as indicated by their relative physical and financial condition**

      Plaintiffs likely do not possess the same financial resources as defendants.  Plaintiffs would incur the costs of travel whether the venue is in Philadelphia or in the Western District. Plaintiffs argue that they would enjoy a direct flight to Philadelphia and would be inconvenienced by a 287 mile drive from Philadelphia to Pittsburgh if the trial were held in the Western District.  This Court is aware that Pittsburgh has an airport, thus alleviating plaintiffs' concern about driving a long distance.  Furthermore, the Western District is closer to plaintiffs than this District.  Thus, the convenience to plaintiffs would not change substantially by transferring the venue to the Western District.  On the other hand, defendants will benefit from a transfer of venue.

      **E.**    **The convenience of the witnesses**

      The <u>Jumara</u> court more fully stated this factor as "the convenience of the witnesses-but

only to the extent that the witnesses may actually be unavailable for trial in one of the fora."

Plaintiffs assert that the employees of Health Advocate, Inc. reside in the Eastern District and

New Jersey, are employed in Plymouth Meeting, PA and are likely witnesses in plaintiffs' case.

Plaintiffs argue that not only would these employees be greatly inconvenienced by transferring

the venue to the Western District, but the transfer may actually make them unavailable for

purposes of taking their testimony and for trial.[2]

With respect to issuing subpoenas for the purpose of taking a non-party witness's

deposition testimony, Federal Rule of Civil Procedure 45(a)(2)(B) provides that such a subpoena

shall issue "from the court for the district where the deposition is to be taken."  "Subject to Rule

45(c)(3)(A)(ii), a subpoena may be served at any place: (A) within the district of the issuing

court."  Fed. R. Civ. P. 45(b)(2)(A).[3]  Thus, plaintiffs may obtain a subpoena from this Court if

the deposition is to be taken in this District and serve upon the non-party witnesses' all of whom

plaintiffs allege reside or work in this District.

With respect to subpoenaing non-party witnesses for trial, Federal Rule of Civil

Procedure 45(a)(2)(A) provides that such a subpoena shall issue "from the court for the district

where the hearing or trial is to be held."  If the case were to be transferred to the Western District,

---

[2]       Similarly, defendants assert that their lower-level employees, who are employed
in Pittsburgh and Camp Hill are likely witnesses.  Transfer to the Eastern District would be an
inconvenience for defendants' employees, but I find defendants' argument that they could not be
produced at trial in this District unpersuasive.

[3]       Noticing the deposition for a location in this District and within 100 miles of the
witnesses' residence or place of employment alleviates the concern identified in Rule
45(c)(3)(A)(ii): "On timely motion, the issuing court must quash or modify a subpoena that: . . .
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles
from where that person resides, is employed, or regularly transacts business in person."

that Court will issue the subpoenas for trial witnesses.  Federal Rule of Civil Procedure 45(b)(2)(C) provides that "[s]ubject to Rule 45(c)(3)(A)(ii), a subpoena may be served at any place: . . . (C) within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the place specified for the deposition, hearing, trial, production, or inspection."  Rule 234.2 of the Pennsylvania Rules of Civil Procedure requires the prothonotary to issue a subpoena upon the request of a party and that "a copy of the subpoena may be served upon any person within the Commonwealth" in any one of several specified methods.  Rule 45(c)(3)(A)(ii) states, "On timely motion, the issuing court must quash or modify a subpoena that: . . . (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person—except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held."  Rule 45(c)(3)(B)(iii) permits a court to quash a subpoena commanding a non-party witness if the subpoena will require that person to "incur substantial expense to travel more than 100 miles to attend trial."  Thus, plaintiffs would be able to subpoena their non-party witnesses located in Plymouth Meeting to attend trial in the Western District unless those persons move to quash the subpoena on the grounds that they will incur substantial expense to attend the trial.  However, even if the subpoenas are quashed, non-party witness testimony can still be introduced at trial via written or videotape deposition testimony.  Thus, plaintiffs ultimately will not be harmed by an inability to procure non-party witness testimony. This factor then militates in favor of granting defendants' motion to transfer.

7

**F.      The location of books and records**

Again, this factor is relevant only to the extent that the books and records could not be produced in the Western District.  There is no indication that either plaintiffs or defendants would be unable to produce relevant books and records if venue was transferred.

**G.      Practical considerations that could make the trial easy, expeditious, or inexpensive**

Many of the practical considerations that could make the trial easy, expeditious or inexpensive have already been considered, including the ability to subpoena non-party witnesses and the travel considerations for each party and non-party witness.  Plaintiff also argues that transferring the venue would "significantly disrupt" the litigation or "result in a waste of judicial resources" because the case has been situated in this District since it was filed in 2007.  I find this argument entirely unpersuasive.  Any litigation which has occurred to this point has been solely on this issue of transfer of venue.  Thus, there is no litigation to "disrupt" and very little judicial resources have been wasted up until this point.

**H.      The relative administrative difficulty in the two fora resulting from court congestion**

Defendants note that the Administrative Office of the United States Courts reports the average caseload in the Western District was 2,052 cases in March 2008, whereas the average caseload in the Eastern District was 30,842.  Plaintiff argues that this factor should be not be considered at all in a case involving ERISA claims.  The Court of Appeals identified court congestion as a factor that may be considered and in this case it militates in favor of transferring venue.

CONCLUSION

Defendant has demonstrated that venue in this action should be transferred to the Western District.  The decisions which gave rise to the underlying claims did not occur in the Eastern District, but rather in Pittsburgh and/or Camp Hill; all of defendants' employees responsible for making those decisions and the relevant documents and records are located in Pittsburgh or Camp Hill; plaintiffs are not a resident of the Commonwealth and transferring the venue will actually move the trial closer to plaintiffs' state of residence; and any witnesses located in this District will not be made unavailable by transferring the venue.  I will grant defendants' motion to transfer this case to the Western District.